# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW S. HENCKELS,<br><br>            Plaintiff,<br><br>      vs.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 11cv01770 DLB

ORDER REGARDING PLAINTIFF'S
SOCIAL SECURITY COMPLAINT

## BACKGROUND

Plaintiff Andrew S. Henckels ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed his application for SSI on January 22, 2009.  AR 102-05.  He alleged disability since December 1, 2005, due to a defective right knee, osteoprostenis and weak bones. AR 121.  After the application was denied initially and on reconsideration, Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ").  AR 64-68, 69-73, 56-57.  On July 20, 2010, ALJ Jeffrey Hatfield held a hearing in Long Beach, California.  AR 23-48.  He issued a decision denying benefits on August 16, 2010.  AR 7-19.  On August 8, 2011, the Appeals Council denied review.  AR 1-3.

<u>Hearing Testimony</u>

ALJ Hatfield held a hearing on July 20, 2010, in Long Beach, California.  Plaintiff appeared with his non-attorney representative, Diana Wade.  Vocational Expert ("VE") Randi Langford-Hetrick also appeared and testified.  AR 25.

At the outset of the hearing, Plaintiff amended his alleged onset date to January 28, 2009.  AR 26.  Plaintiff testified that he was born in November 1969.  He is 5'6", weighs 320 pounds and is right handed.  He has a high school diploma and a vocational certification in plastics technology.  AR 28-29.  He also has a valid driver's license.  AR 30.

Plaintiff reported that he last worked in 2005 at Desert Truck Service.  He mopped floors and picked up the shop.  He quit after a week because he couldn't handle being on his feet for eight hours.  AR 30-31.  Prior to that, Plaintiff worked as a composite fabricator.  In that job, he had to lift 100 pounds or more, stand all day long and move tooling around the shop.  He did that job off and on for two to four years.  Plaintiff also worked at Norcon in 2000 making parts for aircraft.  He had to be on his feet all day, but sometimes could sit for 15 minutes every hour.  The heaviest thing he lifted weighed about 250 pounds.  He was laid off because of lack of work.  AR 32-34.

Plaintiff testified that he can bathe, dress and prepare simple meals without assistance.  AR 34.  He grocery shops and shops with his mom from time to time.  AR 35.

In response to questions from his representative, Plaintiff reported that he did some auto mechanic work in 2008.  He worked with his dad at home, doing auto work for friends.  They did

not work even three or four hours a day.  He could not do that job now because he cannot stand and cannot do heavy lifting.  AR 35-36.

Plaintiff stated that he can sit for about an hour at a time in a relaxed setting.  He has constant pain in his knee.  On a scale of one to ten, the pain averages about six.  He takes Vicodin and Tylenol 500.  After sitting for an hour, his leg goes to sleep.  He can sit longer periods in a recliner than in a hard chair.  During an eight-hour day, Plaintiff could sit a total of two and a half hours.  He cannot sit longer because his knee starts ache and he needs to stand and walk around for 15 or 20 minutes.  AR 36-38.

Plaintiff testified that he had two visits with Dr. Boo, who prepared a residual functional capacity when Plaintiff first met him.  Dr. Boo is the main doctor at a clinic where Plaintiff has seen Dr. Perry and a nurse practitioner.  AR 39-40.  Plaintiff also was evaluated by Dr. Robinson at Mammoth Hospital.  They want him to do surgery for knee replacement and extension of the bones, but he is concerned because his bones are not normal, his tibia is bowed and he has osteopenia in his lower back.  AR 40-42.

The VE testified that most of Plaintiff's past work was as a composite worker in the aircraft industry, which is an SVP 5 from medium to heavy work.  AR 43. Plaintiff's job as a tire worker is SVP 3, classified heavy, but performed as medium work.  AR 44.

For the first hypothetical, the ALJ asked the VE to assume a worker 40 years of age, who completed the twelfth grade and had vocational training in plastics technology.  This worker could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and walk up to two hours and could sit six hours in an eight-hour period, but would need to reposition himself every 30 minutes to relieve discomfort and could not operate foot pedals.  This person could use stairs occasionally, but never ladders, ropes or scaffolds, could balance and stoop occasionally, but could not kneel, crouch or crawl and must avoid concentrated exposure to hazardous machinery and unprotected heights.  The VE testified that this hypothetical individual could not

do Plaintiff's past work, but would be able to perform the full range of sedentary unskilled work. AR 44-45.  Examples of such jobs included assembler, order clerk and telephone quotation clerk. AR 45.

For the second hypothetical, Plaintiff's representative asked the VE to assume that the same person had an inability to sit for more than one hour at a time in an eight-hour workday and had to stand up and walk around for five minutes.  The VE testified that this person could not do the assembly work, but could do the other two jobs.  AR 46.

For the next hypothetical, Plaintiff's representative asked the VE to assume that the person was not able to sustain concentration for twenty percent of the day.  The VE testified that this precluded competitive employment.  AR 47.

Medical Record

In 1986, at 16 years of age, Plaintiff complained of persistent left knee pain and leg length discrepancy.  X-rays revealed a leg length discrepancy in the left tibia.  He had severe bowing with genu varum of the left tibia.  Plaintiff underwent a left valgus osteotomy to correct the varus deformity.  AR 164-65, 167-68, 178.

In November 2008, Plaintiff complained of back pain and swelling in his legs.  He was diagnosed with back pain and left leg edema.  AR 189-91.

On December 1, 2008, x-rays of Plaintiff's thoracic spine showed old slight compressions of T10, T11 and T12 associated with osteophytes and some degenerative change.  AR 181.  X-rays of Plaintiff's lumbar spine revealed slight degenerative changes primarily at L1-2 and L4-5 and facet arthritis of L4-5 and L5-S1.  AR 182.

On December 8, 2008, a Dexa scan of the lumbar spine, hips and left forearm showed osteopenia.  AR 195.

On December 18, 2008, Plaintiff sought treatment from Dr. Richard Price at Mammoth Hospital Clinic for complaints of left knee pain and intermittent low back pain.  Plaintiff reported

having left knee surgery at 18 years of age secondary to a growth plate arrest in his left knee.  On examination, Plaintiff had difficulty squatting, but was able to walk on his heels and toes and lumbar flexed to the floor without problems.  He had negative straight-leg raise and negative seated slump.  He had 5/5 strength in his lower extremities and stable knee ligaments.  He was tender, with an area of abnormal tissue anterolateral to the patella.  X-rays showed minimal osteoarthritis in the left knee and left ankle.  Dr. Price diagnosed left knee pain, likely plica, anterolateral with overlying abnormal biomechanics of the left knee secondary to corrective surgery that he had for tibial growth plate arrest.  Dr. Price recommended an injection of the abnormal plica tissue of his knee.  In terms of his back, Dr. Price indicated that Plaintiff had diffuse osteoarthritis throughout his back with degenerative disk disease.  He mostly had facet osteoarthritis, but his clinical exam was fairly unremarkable and his back did not seem to be giving him much problem.  Plaintiff received a knee injection.  AR 199-200.

On the same date, Dr. Mark Robinson examined Plaintiff with Dr. Price.  Physical examination of the knee showed no defect in extension mechanism, no instability in the knee and a tender plica in the lateral patellar region.  Dr. Robinson indicated that radiographs showed mild early osteoarthritis of the knee.  There was a flexion and valgus deformity of the tibia with the flexion deformity being a multilevel deformity and the valgus deformity existing at the site of an osteotomy.  Plaintiff also had ankle arthritis with an anterior ankle spur.  Dr. Robinson believed that Plaintiff might be a candidate for surgical correction of his deformities, including a leg lengthening and multiple-level osteotomies of the tibia.  AR 203.  X-rays showed post traumatic bowing and medial deviation of the proximal tibia and early multi-compartment degenerative changes in the left knee.  AR 204.

On January 8, 2009, Plaintiff reported that following the injection he continued to have anterolateral knee pain with activities of daily living tasks, but thought the injection helped "maybe slightly."  AR 207.  On examination, Plaintiff continued to be tender with palpable

snapping/popping over the anterolateral femoral condyle of the left knee.  Dr. Price planned to re-inject him.  AR 207.

On February 4, 2009, Plaintiff saw Dr. Michael M. Karch for left knee pain.  Plaintiff reported that he was able to stand, as a mechanic, for approximately 3 to 4 hours and then has to stop secondary to the pain in his knee.  He walked with a limp, which affected his back.  AR 208.  Dr. Karch ordered 52-inch long-length films to determine the orientation of Plaintiff's deformity and noted that Plaintiff was morbidly obese.  AR 251.

On February 19, 2009, Plaintiff reported to Dr. Robinson that injections of corticosteroids in his knee led to a remarkable improvement in his symptoms.  At the current time, Plaintiff had no problems for which he would normally seek medical attention.  Plaintiff had no symptoms and was quite happy with his quality of life.  AR 209, 249.

On April 1, 2009, x-rays of Plaintiff's knees revealed old fracture deformities of the left tibia and fibula.  There was no definite joint space narrowing, but the left knee joint was not well visualized on the film.  AR 224.

On April 2, 2009, Dr. A. Khong, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form.  Dr. Khong opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday and could sit about 6 hours in an 8-hour workday.  He could not operate lower left extremity foot controls frequently.  He occasionally could climb ramps and stairs, but never could climb a ladder, rope or scaffolds.  He frequently could balance and stoop and occasionally could kneel, crouch and crawl.  He had no manipulative, visual, communicative or environmental limitations.  AR 210-14.

On April 8, 2009, Plaintiff complained that he could not stand for more than 4 hours and had swelling in the left leg and knee pain.  Although Plaintiff was aiming to get Social Security disability, his leg did not produce any severe pain requiring medications.  Dr. Robinson noted

that Plaintiff had been limping for his entire life and did not mind liming.  He did not experience any severe problems directly related to his deformed leg.  Following examination, Dr. Robinson indicated that Plaintiff had substantial tibial varus and shortening deformity as noted in the past, but "without any severe impairment in the quality of life in the patient's estimation."  AR 225.

On July 2, 2009, x-rays of the knee revealed degenerative changes in the medial and lateral compartment and to a lesser degree femoropatellar compartment of the left knee, relatively stable in appearance.  AR 237.

On July 7, 2009, Plaintiff complained of severe knee pain and some episodes of locking. Dr. Robinson stated that Plaintiff "does not have any severe functional impairment in his everyday life because of these locking episodes and other problems."  Dr. Robinson diagnosed painful osteoarthritis of the knee with leg deformity, left side, and indicated that there was no less invasive treatment than limb deformity correction and subsequent knee arthroplasty or fusion.  Dr. Robinson opined that Plaintiff was considered to be "totally disabled from work involving standing, walking, climbing or any other than occasional use of the extremity."  AR 236.

On August 20, 2009, Plaintiff reported pain in his knee, poor sleep and aching.  Dr. Robinson referred him to his regular primary care physician for ongoing pain management.  AR 239.

On September 19, 2009, Plaintiff reported chronic left knee pain/knee locks and sought pain medications.  The provider noted that Plaintiff weighed too much for surgery and refused to assume any responsibility for his weight.  On examination, Plaintiff's left knee was without obvious deformity, but it was hard to appreciate with his obesity.  Plaintiff was prescribed tramadol for pain.  AR 266-67.

On January 13, 2010, Plaintiff sought pain medication to help with sleep secondary to knee pain.  Plaintiff was seen by Joshua Vendig, NP, who diagnosed chronic left knee pain and

prescribed Vicodin for pain at night.  Mr. Vendig noted that Plaintiff's back pain was stable with ibuprofen.  AR 264-65.

On June 16, 2010, Dr. Thomas Boo completed a Physical Residual Functional Capacity Questionnaire (Obesity) form.  Plaintiff had two visits with Dr. Boo and ongoing treatment with the clinic.  Dr. Boo indicated that Plaintiff had diagnoses of degenerative joint disease of the left knee, end-stage arthritis and his prognosis was not good without surgery.  Plaintiff had chronic pain, including constant knee ache and increased pain with ambulation or standing.  Dr. Boo believed that examination of the knee joints was difficult secondary to obesity, but Plaintiff had crepitus, joint knee tenderness and slight atrophy of the musculature.  He had full extension of his knee, but decreased flexion (to about 90 degrees).  Dr. Boo also indicated that Plaintiff had extreme obesity, which imposed limitations on the speed of ambulation and increased respiratory workload.  Plaintiff had significant limitation of motion and his pain and other symptoms were severe enough to interfere occasionally with attention and concentration.

Dr. Boo opined that Plaintiff could walk 1-2 city blocks without rest or severe pain.  He could sit 2 hours at a time and stand 2 hours at a time.  In an 8-hour day, he could sit about 4 hours, stand less than 2 hours and walk less than 2 hours.  He would need to walk every 90 minutes for 2 minutes at a time.  He needed a job that permitted shifting positions at will, but did not need unscheduled breaks.  He did not require use of a cane or other assistive device.  Dr. Boo further opined that Plaintiff could lift 20 pounds rarely and could never lift 50 pounds. He frequently could twist and occasionally could stoop, but could never crouch/squat, climb ladders, climb stairs or kneel.  He had no limitations with reaching, handling or fingering.  Dr. Boo believed that Plaintiff had been limited to this degree since June 1, 2010.  In response to the question of whether Plaintiff could work 8 hours a day 5 days a week with a break in the AM, a one hour lunch and a break in the PM, he opined that it "depend[ed] on the job," but Plaintiff could not work as a composite fabricator.  AR 282-288.

ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 28, 2009.  He also found that Plaintiff had the severe impairments of a history of Blount's disease status post left tibial osteotomy in 1986 with tibial varus and shortening deformity in the left lower extremity, degenerative joint disease of the left knee, degenerative disc disease of the lumbar spine, old slight compressions of T10, T11 and T12 of the thoracic spine and morbid obesity.  AR 16.  Despite these impairments, he retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds frequently, to stand/walk 30 minutes at a time for a total of 2 hours in an 8-hour workday, sit 6 hours in an 8-hour workday with the need to stand up to reposition every 30 minutes, no operation of foot pedals with the bilateral lower extremities, occasional ramp/stair climbing, no ladder/rope/scaffold climbing, occasional balance and stoop, but no kneeling, crouching or crawling and no concentrated exposure to unprotected heights and dangerous machinery.  With this RFC, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy.  AR 12-18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. § 416.920 (a)-(g).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (history of Blount's disease status post left tibial osteotomy in 1986 with tibial varus and shortening deformity in the left lower extremity, degenerative joint disease of the left knee, degenerative disc disease of the lumbar spine, old slight compressions of T10, T11 and T12 of the thoracic spine and morbid obesity) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) did not have an impairment or combination of impairments which meets or equals one of the impairments set

forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not  perform any past relevant

work, but (5) could perform a significant number of jobs in the national economy.  AR 12-18.

Here, Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting his

subjective testimony and for rejecting the opinions of his treating physicians.

## DISCUSSION

A.  Subjective Testimony

Plaintiff argues that the ALJ provided legally insufficient rationale to reject his subjective

testimony.

In _Orn v. Astrue_, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other
> non-exertional impairment.  See _Fair v. Bowen_, 885 F.2d 597, 603 (9th Cir.1989).
> However, to discredit a claimant's testimony when a medical impairment has been
> established, the ALJ must provide "specific, cogent reasons for the disbelief." _Morgan_,
> 169 F.3d at 599 (quoting _Lester_, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why
> the [claimant's] testimony is unpersuasive." _Id._  Where, as here, the ALJ did not find
> "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting
> the claimant's testimony must be clear and convincing." _Id._

> Social Security Administration rulings specify the proper bases for rejection of a
> claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be
> supported by reasons that do not comport with the agency's rules.  See 67 Fed.Reg. at
> 57860 ("Although Social Security Rulings do not have the same force and effect as the
> statute or regulations, they are binding on all components of the Social Security
> Administration, ... and are to be relied upon as precedents in adjudicating cases."); _see_
> _Daniels v. Apfel_, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at
> step three of the disability determination was contrary to agency regulations and rulings
> and therefore warranted remand).  Factors that an ALJ may consider in weighing a
> claimant's credibility include reputation for truthfulness, inconsistencies in testimony or
> between testimony and conduct, daily activities, and "unexplained, or inadequately
> explained, failure to seek treatment or follow a prescribed course of treatment." _Fair_,
> 885 F.2d at 603; _see also Thomas_, 278 F.3d at 958-59.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of these symptoms was not credible.  AR 17.  First, the ALJ found that Plaintiff's subjective complaints and alleged limitations were out of proportion to the objective medical findings.  Plaintiff argues that the ALJ's rejection of his testimony based on a lack of objective evidence is "always legally insufficient."  Opening Brief, p. 10.  However, an ALJ may consider lack of objective medical evidence so long as it is not the sole reason for rejecting a claimant's testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).  In this case, the ALJ noted that there was no evidence of disuse muscle atrophy that would be compatible with Plaintiff's asserted level of inactivity.  AR 17.  The ALJ also considered that Plaintiff did not require a cane for ambulation.  AR 16.  Further, although Plaintiff complained of back pain, medical records showed fairly unremarkable examinations of his back and any pain was stable with the use of ibuprofen.  AR 16.

Plaintiff believes that the objective medical record supports his testimony, referring to records identifying his left leg deformity, limp and knee pain.  Indeed, Plaintiff claims that it is "clear and consistent" that he "suffers from a left leg deformity that causes chronic pain in his left leg."  Opening Brief, p. 12.  While Plaintiff correctly cites evidence of a left leg deformity and limp, he omits his own reports that he had no symptoms from the left leg deformity, did not mind limping and there was no severe impairment in the quality of his life.  AR 15, 225, 236.  In sum, Plaintiff did not attribute his alleged disability and limiting symptoms to his left leg deformity.  Rather, Plaintiff premised his disability on left knee pain.  AR 15.

As to his left knee, the ALJ clearly acknowledged objective evidence of Plaintiff's degenerative joint disease of the left knee, along with limited movement of the knee, patella femoral crepitus, medial joint tenderness with flexion and extension, along with tenderness at the medial joint line.  AR 15, 16.  However, the ALJ rejected Plaintiff's subjective report that he

could not stand because there was no evidence of disuse muscle atrophy that would be compatible with Plaintiff's alleged level of inactivity.  AR 17.  Throughout the opinion, the ALJ also noted that there was no evidence of any motor weakness or sensory deficit of Plaintiff's lower extremities, he did not require a cane for ambulation, and x-rays did not show degeneration of the left knee joint to preclude standing/walking for even 30 minutes at a time. AR 16.

Second, the ALJ properly discounted Plaintiff's subjective complaints and alleged limitations because they were not consistent with the treatment that he received.  AR 17.  In assessing credibility, an ALJ properly considers a claimant's pain medication and treatment.  *See Bunnell*, 947 F.2d at 345-46; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.19)89) (ALJ permissibly considered discrepancies between the claimant's allegations of "'persistent and increasingly severe pain'" and the nature and extent of treatment obtained).  Here, the ALJ considered that Plaintiff had not received any treatment for his back pain other than use of pain medication, namely ibuprofen.  AR 16, 17.  The ALJ also considered that Plaintiff did not use or require an assistive device for ambulation despite his left leg deformity and left knee pain and that Plaintiff declined recommended surgery for his left leg and knee.  AR 17.

Plaintiff contends that his steroid injection therapy was not conservative treatment and the ALJ improperly speculated that there was some other non-conservative treatment option. Opening Brief, p. 13.  Contrary to Plaintiff's contention, the ALJ did not characterize Plaintiff's steroid injection therapy as conservative, but rather correctly found that Plaintiff declined recommended surgery.  AR 14, 236.  The ALJ also considered that Plaintiff reported "remarkable improvement" in his left knee symptoms from the corticosteroid injections.  AR 14, 209, 249.

Third, and finally, the ALJ discounted Plaintiff's subjective testimony because it was inconsistent with his reported activities and abilities.  An ALJ may discredit a claimant's

testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.19*99*); *Fair*, 885 F.2d at 603.  In this case, the ALJ properly considered Plaintiff's report of the following: (1) working as an auto mechanic after the date he claimed to be disabled; (2) standing, as a mechanic, for about 3-4 hours after the date he claimed to be disabled; (3) his ability to bathe, dress, prepare simple meals and shop; and (4) repeatedly indicating to Dr. Robinson that he had no severe impairment in the quality of his life after the alleged onset date. AR 17, 208, 225, 236, 251.

Plaintiff argues that the minimal activities of daily living cited by the ALJ, including the ability to bathe, dress and shop, are not inconsistent with his claim that he cannot work a full time job.  Standing alone these activities may not demonstrate capabilities transferable to a work setting.  However, Plaintiff overlooks the other findings made by the ALJ regarding Plaintiff's transferable activities and abilities; that is, Plaintiff's own statements, which were made after his alleged onset date, that he had no severe impairment in his quality of life, that he worked (for at least some time) as an auto mechanic and that he could stand for about 4 hours.

For the reasons discussed above, the ALJ's analysis of Plaintiff's subjective testimony was supported by substantial evidence and free of legal error.

B.  Opinion of Dr. Boo

In assessing Plaintiff's RFC, the ALJ gave weight to the opinion of Dr. Boo, but not his opinion that Plaintiff could stand/walk less than 2 hours in an 8-hour workday. AR 16.  Plaintiff faults the ALJ for not addressing a separate portion of Dr. Boo's opinion indicating that Plaintiff's pain would occasionally (6% to 33% in an 8-hour workday) interfere with his ability to concentrate at work and for not including such a limitation in the RFC.  Plaintiff asserts that during the administrative hearing his representative set forth a hypothetical that included a twenty percent decrease in productivity during the workday. AR 46.  The VE testified that no

work would be available with such a limitation.  AR 46-47.  Plaintiff therefore concludes that he is disabled.

The Commissioner counters that Dr. Boo's "checkmark in the concentration section" was neither significant nor probative evidence and thus the ALJ did not need to discuss it.  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need not discuss all evidence presented to him, but must explain why significant probative evidence has been rejected).  The Court agrees. No other physician identified limitations related to concentration and Plaintiff did not testify to any such limitations.  Further, Plaintiff's argument is purely speculative and assumes (1) that Dr. Boo found Plaintiff completely incapable of concentration for a given period of time; (2) that Dr. Boo's selection of the 6-33% category really meant at least 20% of the time; and (3) that this limitation existed or would exist for at least twelve months.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Andrew Henckels.

IT IS SO ORDERED.

Dated:   __October 18, 2012__                    _____ /s/ *Dennis L. Beck*
                                                          UNITED STATES MAGISTRATE JUDGE